IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**NICHOLAS P. FRANKS**                                                                                  **PLAINTIFF**

vs.                                                             CIVIL ACTION NO.: 3:25-cv-972-KHJ-MTP

**RANKIN COUNTY, MISSISSIPPI;**
**SHERIFF BRYAN BAILEY In His Individual**
**and Official Capacities; JOHN DOES 1-10;**
**CITY OF FLOWOOD, MISSISSIPPI;**
**CHIEF OF POLICE ERIC ZETTERHOLM**
**In His Individual and Official Capacities;**
**LIN EASTERLING In His Individual and**
**Official Capacities; and John DOES 11-20**                                                **DEFENDANTS**

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff, Nicholas P. Franks ("Nick"), files this his Complaint as follows:

**INTRODUCTION**

1. This cause of action is for monetary damages brought under 42 U.S.C. § 1983 to redress the deprivation under color of state law of Nick's clearly established rights as secured by the Fourth, and Fourteenth Amendments to the United State Constitution.

**VENUE AND JURISDICTION**

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988.

3. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Southern District of Mississippi. Moreover, upon information and belief, all of the parties reside in this Judicial District.

1

## PARTIES

4. Nick is an adult resident citizen of the State of Mississippi.

5. Defendant, Rankin County, Mississippi is a political subdivision of the State of Mississippi. The Rankin County Sheriff's Departmen is and was at all times herein a Rankin County agency.

6. Bryan Bailey is and was at all times herein the Sheriff of Rankin County, Mississippi.

7. John Does 1-10 were at all times herein citizens of the United States and the State of Mississippi. John Does 1-10 were at all times herein employed by the Rankin County Sheriff's Department as duly appointed and sworn law enforcement officers and/or administrators acting in their individual capacities and/or under color of state law, and within the scope of their employment.

8. Defendant, City of Flowood, Mississippi, is a political subdivision of the State of Mississippi. The Flowood Police Department is and was at all times herein a City of Flowood agency.

9. Eric Zetterman is and was at all times herein the Chief of Police in Flowood, Mississippi.

10. Lin Easterling is an adult resident citizen of the State of Mississippi. At all times herein he was employed by the Flowood Police Department as a duly appointed and sworn law enforcement officer acting in his individual capacity and/or under color of state law, and within the scope of his employment.

11. John Does 11-20 were at all times herein citizens of the United States and the State of Mississippi. John Does 11-20 were at all times herein employed by the Flowood Police

Department as duly appointed and sworn law enforcement officers and/or administrators acting in their individual capacities and/or under color of state law, and within the scope of their employment.

## FACTS

12.     In the early morning hours of November 5, 2023, Nick was a passenger in a car being driven by his brother when they were stopped by one or more John Does 11-20 in Flowood, Mississippi.  At that time Nick was asleep in the backseat of the car.

13.     Nick was dragged out of the car by one or more John Does 11-20, handcuffed and thrown into the rear of a patrol car.  During the course of being dragged from the car and handcuffed, Nick's insulin pump was ripped out of his leg and left at the scene.

14.     Nick was transported to the Flowood Police Department.  While there a female Jon Doe 11-20 told him to stand up from the chair he was sitting in and then proceeded to sweep his legs out from under him causing Nick to hit the floor.  Nick began screaming in pain. He was then laid on a bench.

15.     Thereafter, Officer Lin Easterling walked over to Nick and began choking him.  Other officers in the room had to forceably remove Easterling's hands from Nick's neck.

16.     At that point, Nick advised one of the officers that his insulin pump had been ripped out of his leg and that he might have a broken arm.  The fire department was called and after evaluating Nick he was transported to the Rankin County Jail.

17.     Upon arriving at the Rankin County Jail, Nick advised one or more John Does 1-10 that he needed medical attention as he could feel his blood sugar spiking as a result of the missing insulin pump.  He was examined by a John Doe 1-10 and was told that he would be fine.

18. Nick began throwing up repeatedly and again asked for help. Another John Does 1-10 examined him and told him "You're on drugs." Nick was never examined by a physician or taken to a hospital for evaluation while in the custody of the Rankin County Sheriff.

19. Later that day, Nick's father arrived from North Mississippi and made arrangements to have Nick released from jail. Immediately upon Nick's release, his father took him to Merit Health - Rankin where it was determined that Nick was in ketoacidosis. Nick was admitted to ICU and observation.

## CAUSES OF ACTION

**COUNT I - 42 U.S.C. §1983 - FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS AGAINST DEFENDANTS LIN EASTERLING AND JOHN DOES 11-20, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES**

20. Nick incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

21. The conduct by Officer Easterling and John Does 11-20 constituted excessive force in violation of the Fourteenth Amendment of the United States Constitution and clearly established law.

22. At all material times hereto, Officer Easterling and John Does 11-20 were acting under the color of state law, as agents of the City of Flowood, Mississippi, and within the scope of their employment and authority as duly certified law enforcement officers of the City of Flowood, Mississippi.

23. At all times material hereto, Officer Easterling and John Does 11-20 were acting in their capacity as agents of the City of Flowood Police Department and failed to intervene in the violation of Nick's federal rights as well as failed to render medical assistance to Nick. John Does

11-20 are therefore liable in both their individual and official capacities.

24. At all material times hereto, Officer Easterling and John Does 11-20 had no reason to believe that Nick was armed or dangerous.

25. At all material times hereto, Officer Easterling and John Does 11-20 did not have a reasonable fear of imminent bodily harm when they assaulted Nick, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Nick.

26. It was a violation of Nick's Fourteenth Amendment rights for Officer Easterling and John Does 11-20 not to render medical aid to Nick.

27. As a result of Officer Easterling and John Does 11-20 unjustified, excessive and illegal use of force and/or denial of medical treatment, Nick experienced conscious pain and suffering and sustained numerous physical injuries.

28. In addition to these uses of unjustified, excessive, and illegal use of force, Officer Easterling and each of the John Does 11-20 had a duty to intervene on behalf of a detainee whose constitutional rights were being violated in their presence by another officer.

29. Officer Easterling and John Does 11-20 all recognized that the force being used was excessive and unreasonable under the circumstances and that Nick was being denied appropriate medical care.

30. Officer Easterling and John Does 11-20 each observed and were in a position to intervene to stop the unlawful treatment of Nick.

31. Officer Easterling and John Does 11-20 failure to intervene in unreasonable force and to provide appropriate medical care to Nick violated his clearly established Fourth, Eighth and Fourteenth Amendment rights and caused him to experience conscious pain and suffering and to

suffer compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

33. Punitive damages are available against Easterling and John Does 11-20 and are hereby claimed as a matter of federal common law. Nick is also entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### COUNT II - 42 U.S.C. §1983 - FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS AGAINST DEFENDANTS JOHN DOES 1-10, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES

33. Nick incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

34. The conduct by John Does 1-10 constituted excessive force in violation of the Fourteenth Amendment of the United States Constitution and clearly established law.

35. At all material times hereto, John Does 1-10 were acting under the color of state law, as agents of Rankin County, Mississippi, and within the scope of their employment and authority as duly certified law enforcement officers of Rankin County, Mississippi.

36. At all times material hereto, John Does 1-10 were acting in their capacity as agents of the Rankin County Sheriff's Department and failed to intervene in the violation of Nick's federal rights as well as failed to render medical assistance to Nick. John Does 1-10 are therefore liable in both their individual and official capacities.

37. At all material times hereto, John Does 1-10 had no reason to believe that Nick was armed or dangerous.

38. At all material times hereto, John Does 1-10 did not have a reasonable fear of imminent bodily harm when they assaulted Nick, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Nick.

39. It was a violation of Nick's Fourteenth Amendment rights for John Does 1-10 to not render medical aid to Nick.

40. As a result of John Does 1-10 unjustified, excessive and illegal use of force and/or denial of medical treatment, Nick experienced conscious pain and suffering and sustained numerous physical injuries.

41. In addition to these uses of unjustified, excessive, and illegal use of force, each of the John Does 1-10 had a duty to intervene on behalf of a detainee whose constitutional rights were being violated in their presence by another officer.

42. John Does 1-10 all recognized that the force being used was excessive and unreasonable under the circumstances and that Nick was being denied appropriate medical care.

43. John Does 1-10 each observed and were in a position to intervene to stop the unlawful treatment of Nick.

44. Jonh Does 1-10 failure to intervene in unreasonable force and to provide appropriate medical care to Nick violated his clearly established Fourth, Eighth and Fourteenth Amendment rights and caused him to experience conscious pain and suffering and to suffer compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

45. Punitive damages are available against John Does 1-10 and are hereby claimed as a matter of federal common law. Nick is also entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III - 42 U.S.C. §1983 - *MONELL* LIABILITY AGAINST
## THE CITY OF FLOWOOD, MISSISSIPPI

46. Nick hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

47. The City of Flowood and Chief of Police Eric Zetterholm ("Chief Zetterholm") had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Flowood police officers performing policing functions on behalf of the City.

48. The City of Flowood and Chief Zetterholm and/or approved of The City of Flowood's written policies and training governing the conduct of the Flowood police department officers performing policing and jailing functions.

49. More broadly, the City of Flowood and Chief Zetterholm had actual and/or constructive knowledge of a pattern of violent conduct carried out by Flowood police department officers, who had no expectation that they would be disciplined for their unconstitutional behavior.

50. The policies and training established and/or approved by the City of Flowood and Chief Zetterholm constitute the official policy of the City of Flowood and were the moving force behind and caused Nick's injuries.

51. The City of Flowood had knowledge of the Flowood Police Department's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

52. The City of Flowood, Mississippi, acting through Chief Zetterholm and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that

would result from the Police Department's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

53. On or prior to November 5, 2023, the City of Flowood, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees and detainees.

54. On or prior to November 5, 2023, the City of Flowood, Mississippi, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by the Flowood Police Department.

55. On or prior to November 5, 2023, the City of Flowood, Mississippi, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

56. The City of Flowood with deliberate indifference to the rights of arrestees, detainees, and the like, continued to employ the Officer Easterling and John Does 11-20 and other officers despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct.

57. The City of Flowood's failure to terminate or properly discipline Officer Easterling and John Does 11-20 is part of its larger custom, police, or practice of failing to supervise, terminate, or properly discipline its officers for unconstitutional, unlawful, or otherwise improper conduct, and

thereby encouraged John Does 11-20 to continue engaging in unlawful acts towards detainees, including Nick.

58. On or prior to November 5, 2023, the City of Flowood with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified its agents, by providing improper and harmful training to officers.

59. The actions of Officer Easterling and John Does 11-20 in the City of Flowood on a public roadway, including the brutal unprovoked nature of the attack, the failure to intervene, render aid or provide medical assistance, infer that Officer Easterling and John Does 11-20 expected no discipline and had nothing to fear as a result of their actions.

### COUNT IV - 42 U.S.C. §1983 - *MONELL* LIABILITY AGAINST RANKIN COUNTY, MISSISSIPPI

60. Nick hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

61. The Rankin County Board of Supervisors and Sheriff Bryan Bailey had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Rankin County Sheriff deputies and detention officers performing policing functions on behalf of the County.

62. The Rankin County Board of Supervisors and Sheriff Bryan Bailey established and/or approved of The Rankin County Sheriff Department's written policies and training governing the conduct of Rankin County Sheriff deputies performing policing and jailing functions.

63. More broadly, the Rankin County board of Supervisors and Sheriff Bryan Bailey had actual and/or constructive knowledge of a pattern of violent conduct carried out by deputies of the

Rankin County Sheriff's Department, who had no expectation that they would be disciplined for their unconstitutional behavior.

64. The policies and training established and/or approved by The Rankin County Board of Supervisors and Sheriff Bryan Bailey constitute the official policy of Rankin County, Mississippi and were the moving force behind and caused Nick's injuries.

65. Rankin County, Mississippi acting by and through its Board of Supervisors and Sheriff Bryan Bailey and other policymakers, had knowledge of Rankin County Sheriff Department's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

66. Rankin County, Mississippi, acting by and through its Rankin County Board of Supervisors and Sheriff Bryan Bailey and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the Sheriff Department's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

67. On or prior to November 5, 2023, Rankin County, Mississippi, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees and detainees.

68. On or prior to November 5, 2023, Rankin County Mississippi, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers

to turn a blind eye to and not intervene with the use of excessive force by the Rankin County Sheriff's Department.

69. On or prior to November 5, 2023, Rankin County, Mississippi, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

70. Some examples follow:

A. Years of abuse involving multiple officers which were identified in years ranging from 2004 to 2024. See How a 'Goon Squad' of Deputies Got Away With Years of Brutality - The New York Times;

B. Department deputies regularly used a social media account, WhatsApp, to joke and describe violence toward detainees. See 'Did You Tase Him in the Face!?' Inside 'Goon Squad' Deputies' Group Chat - The New York Times;

C. Multiple lawsuits were filed against Rankin County detailing horrific acts of abuse, including Barrett v. City of Pelahatchie, 3:21-cv-00124-HTW-LGI, involving the shooting death of Pierre Woods;

D. In Gerhart v. Rankin County, Mississippi, 3:11-cv-586-HTW-LRA, it was alleged that members of the Rankin County Sheriff's Office mis-identified a home for a drug raid, assaulted a sixteen-year-old teenager in the home and threatened to kill him;

E. In Archie v. Rankin County, Mississippi, 3:13-cv-066-CWR-FKB, it was alleged that a Rankin County deputy struck a robbery suspect with his service vehicle, then

proceeded to brutally beat, stomp and kick the handcuffed man and allowed a civilian to join in while other deputies failed to intervene;

   F. In <u>Mack v. Rankin County, Mississippi</u>, 3:24-cv-306-CWR-ASH, it was alleged that the plaintiff was beaten at the Rankin County Jail with heavy steel jail keys aned was beaten, stomped and kicked;

   G. In <u>Monica Lee v. Rankin County, Mississippi</u>, Rankin County Circuit Court Cause Number 22-073, the Plaintiff alleged that a Rankin County deputy caused the death of her son by beating him with a closed fist and causing him to asphyxiate by kneeling on his neck and back;

   H. In <u>Carvis Johnson v. Rankin County, Mississippi</u>, 3:20-cv-009-KHJ-FKB, the plaintiff, a detainee at the Rankin County Jail, alleged that he was assualted and hogtied on multiple occasions resulting in injuries to both eyes, broken and missing teeth, and a broken jaw;

   I. In <u>Michael Jenkins and Eddie Parker v. Rankin County, Mississippi</u>, multiple Rankin County deputies conducted a warrantless raid of Parker's home. For approximately two hours the defendants beat, tortured, and tased the two plaintiffs, culminating with a deputy discharging his service weapon into the mouth of Michael Jenkins;

   J. Deputies of the Rankin County Sheriff's Department videotaped themselves shocking an intellectually disabled man with an electrified vest meant to control violent inmates and shared the video among themselves via the WhatsApp social medial message app. See https://www.wlbt.com/2025/11/21/videos-show-rankin-county-jail-guards-mocking:intellectualy-disabled-inmate/;

   K. In August, 2022, a Rankin County deputy was seen on dashcam video tazing a handcuffed detainee in the forehead while the detainee was in the back of a patrol vehicle.

13

71. Rankin County, Mississippi with deliberate indifference to the rights of arrestees, detainees, and the like, continued to employ John Does 1-10 and other officers despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct.

72. Rankin County, Mississippi's failure to terminate or properly discipline John Does 1-10 is part of its larger custom, police, or practice of failing to supervise, terminate, or properly discipline its officers for unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged the John Does 1-10 to continue engaging in unlawful acts towards detainees, including Nick.

73. On or prior to November 5, 2023, Rankin County, Mississippi with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified its agents, by providing improper and harmful training to officers.

74. The actions of John Does 1-10, including the failure to intervene, render aid or provide medical assistance infer that John Does 1-10 expected no discipline and had nothing to fear as a result of their actions.

## COUNT V - 42 U.S.C. §1983

75. Nick hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

76. Rankin County, Mississippi failed to properly supervise, train or modify its training to John Does 1-10 and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force, intervention in the excessive use of force by fellow officers, and the appropriate rendering of medical assistance to detainees.

77. Illegal use of force and failure to render aid and/or medical treatment during detention is a usual and recurring situation which the Rankin County Sheriff's Department law enforcement officers and other agents encounter on a regular basis. As such, Rankin County, Mississippi was aware of a need for more and different training. Rankin County, Mississippi specifically knew that its officers, including John Does 1-10 needed proper supervision.

78. Rankin County, Mississippi with deliberate indifference to the rights of citizens, failed to provide adequate training and supervision to its officers, including John Does 1-10.

79. Rankin County was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training, proper supervision and the failure to modify its training.

80. As such, Rankin County, Mississippi, was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

81. The failure to train, supervise and/or to appropriately modify training constituted official Rankin County, Mississippi policies, practices, or customs.

82. Rankin County, Mississippi's failure to train, supervise and/or to modify training was behind the acts and omissions of John Does 1-10 toward Nick.

83. As a direct and proximate result of Rankin County's acts and omissions, Nick suffered injuries, and experienced pain and suffering.

84. As a direct and proximate result of the acts and omissions described herein, Nick suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

85. Nick is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT VI - ECONOMIC DAMAGES

86. Nick re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

87. As a result of the act(s) or omission(s) of these Defendants, Nick seeks the recovery of any and all kinds of economic damages available under the law and incurred as a result of the actions and inactions of the defendants, and the injures sustained by him.

## COUNT VII - NON-ECONOMIC DAMAGES

88. Nick re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

89. As a result of the act(s) or omission(s) of the Defendants, Nick seeks recovery for certain non-economic damages which occurred as a result of the Defendants' negligent act(s) or omission(s); including, but not limited to: physical injuries, pain and suffering, severe mental pain and suffering, anguish, inconvenience, worry, emotional distress, loss of the enjoyment of life, medical or special damages, and other damages, directly attributable to the occurrence made the basis of this lawsuit and directly attributable to his injuries and the harm he has sustained.

90. Nick has suffered out-of-pocket expenses which include travel expenses, attorneys' fees, court costs, time from work and other expenses. Accordingly, Nick seeks all general, special, incidental and consequential damages as shall be proven at the time of trial, including exemplary and enhanced damages. Nick seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, a statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to Defendants. Nick also seeks post-judgment interest at the maximum rate allowed by law.

91.     The amount of total damage suffered by Nick is significant and continuing in nature. Nick reserves the right to amend and state further with respect to his damages.

## COUNT VIII - ATTORNEYS FEES

92.     Pursuant to the Civil Rights Attorney's Fee Award Act, 42 U.S.C. §1988, a prevailing partY in a §1983 case is entitled to recover his or her attorney's fees. As such, Nick further prays for all costs and attorney fees associated with bringing the present case to trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Nicholas P. Franks, for judgment against Defendants as follows:

a.     A money judgment against the John Does 1-20 for compensatory, special damages and punitive damages, together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

b.     A money judgment against Rankin County, Mississippi and Sheriff Bryan Bailey for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

c.     A money judgment against the City of Flowood and Chief of Police Eric Zetterholm for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

d.     For the appointment of a receiver or similar authority to ensure that Rankin County and the City of Flowood properly trains and supervises its employees, and implements all other remedies available at law;

  e.  For such other and further relief as this Court deems just and equitable.

                RESPECTFULLY SUBMITTED,
                NICHOLAS P. FRANKS

            By: /s/ *Robert G. Germany*
               His Attorney

ROBERT G. GERMANY, MSB 4800
GERMANY LAW FIRM, PLLC
P.O. Box 1028
Madison, MS 39130
Telephone: 601-487-0555
Facsimile: 601-487-1088
bob@bobgermanylaw.com